IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OAK PARK ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PREMIUM COMPOUNDING, INC. | ) |
| | ) |
| Defendant. | ) |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Defendant, Premium Compounding, Inc. ("PCI"), hereby removes this action from the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois to the United States District Court for the Northern District of Illinois. Removal is proper because this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over plaintiff's claim brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

In further support of removal, PCI states as follows:

## I. THE STATE COURT ACTION.

1. On or about March 14, 2022, plaintiff, on behalf of itself, and purportedly on behalf of a class similarly situated, filed a Class Action Complaint with the Clerk of the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois (the "State Court Action"). The State Court Action was assigned Cause No. 22 CH 93.

2. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all substantive records and proceedings from the state court are attached hereto as Exhibit 1.

3.      Plaintiff's Complaint consists of a single count that alleges violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.  (*See, Cmplt. attached hereto as part of Ex. 1*).

## II.   FEDERAL QUESTION JURISDICTION EXISTS.

4.      This case arises from PCI's alleged sending or the causing of sending unsolicited faxes.  Plaintiff alleges in its Complaint that PCI's conduct violated the TCPA, 47 U.S.C. § 227. (*Ex. 1, Cmplt., ¶¶ 15-28*).

5.      This Court possesses original jurisdiction in all cases arising under the laws of the United States.  28 U.S.C. § 1331.  As the United States Supreme Court held in *Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 386-87 (2012), plaintiff's Complaint arises under the laws of the United States because the TCPA is a law of the United States and plaintiff seeks recovery under that law. *See also, Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 451 (7th Cir. 2005).

6.      Under *Brill*, this Court has jurisdiction over plaintiff's putative class action lawsuit because it arises under the laws of the United States.

## III.   REMOVAL IS TIMELY.

7.      PCI was served with Summons and a copy of the Complaint in this matter on April 4, 2022.

8.      There can be no dispute that removal is timely since this notice is filed within 30 days of the date the Complaint was served.  28 U.S.C. § 1446(b).

## IV.   PROPER SERVICE OF THIS NOTICE AND REQUEST FOR ADDITIONAL ARGUMENTS, IF NECESSARY.

9.      PCI is the only named defendant in this case.  Therefore, there is no issue regarding other defendants' consent to removal.

10. Pursuant to 28 U.S.C. § 1446(d), PCI will provide written notice of the filing of this Notice of Removal to Plaintiff and the Clerk of the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois.

11. In the event that plaintiff files a motion to remand the case or the Court considers remand *sua sponte*, PCI respectfully requests the opportunity to submit additional arguments or evidence in support of removal as may be appropriate or may be requested by the Court.

WHEREFORE, Defendant, Premium Compounding, Inc., hereby removes this case to the United States District Court for the Northern District of Illinois, Eastern Division.

Respectfully submitted,

PREMIUM COMPOUNDING, INC.

By:  /s/ *James J. Sipchen*
  James J. Sipchen
  Richard M. Waris
  Brendan J. Nelligan
  PRETZEL & STOUFFER, CHARTERED
  One South Wacker Drive
  Suite 2500
  Chicago, IL 60606
  (312) 346-1973
  jsipchen@pretzel-stouffer.com
  rwaris@pretzel-stouffer.com
  bnelligan@pretzel-stouffer.com

# EXHIBIT 1

FILED
3/14/2022 4:26 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| OAK PARK ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | No. 22CH00000093 |
| Plaintiff, | ) ) | |
| v. | ) ) | CLASS ACTION |
| PREMIUM COMPOUNDING, INC., | ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Oak Park Animal Hospital, Ltd. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, alleges the following upon information and belief against defendant Premium Compounding, Inc. ("Defendant"):

## PRELIMINARY STATEMENT

1.     On behalf of itself and the other members of the class, Plaintiff seeks statutory damages and other relief from Defendant arising out of its violations of the Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), which prohibits any person or entity from sending an "unsolicited advertisement" by facsimile.

2.     The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).



3.     The TCPA provides a private right of action and provides minimum statutory damages of $500 per violation. For faxes sent knowingly or willfully, the Court can increase the damages up to three times, to $1,500 per violation. 47 U.S.C. § 227(b)(3).

4.     Plaintiff has received at least one unsolicited advertisement by facsimile sent by or on behalf of Defendant and advertising its medication compounding services and goods available for purchase. Exhibit A.

5.     Defendant did not have express invitation or permission to send any advertisement to Plaintiff by fax.

6.     Plaintiff has no "established business relationship" with Defendant, but an unsolicited advertisement sent by facsimile on the basis of an "established business relationship" must include on its first page a specific, clear, and conspicuous opt-out notice, or else it violates the TCPA. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii). The opt-out notice must state, "that the recipient may make a request to the sender of the unsolicited advertisement to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time ... with such a request ... is unlawful." 47 U.S.C. § 227(b)(2)(D)(ii). The opt-out notice must include "a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender." 47 U.S.C. § 227(b)(2)(D)(iv)(I). Exhibit A did not contain the opt-out notice required by the TCPA, meaning any "established business relationship" with Defendant would be irrelevant in this action. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. §

64.1200(a)(4)(iii).

7.      Unsolicited faxes cause concrete damage to their recipients, such as wasting the recipient's valuable time, interrupting the recipient's privacy, tying up telephone lines, preventing fax machines from receiving authorized faxes, preventing the use of fax machines from sending outgoing faxes, wasting the recipient's paper and ink toner printing the sender's advertising material, causing undue wear and tear on fax machines, and requiring additional labor to attempt to discern the source and purpose of the unsolicited message. Here, Defendant's junk fax was automatically printed to paper on Plaintiff's fax machine upon receipt, wasting Plaintiff's paper and toner.

8.      On behalf of itself and all others similarly-situated, Plaintiff brings this action seeking statutory damages and other relief for each of Defendant's violations of the TCPA occurring during the statutory limitations period commencing four years prior to the filing of this action and continuing until the Court orders notice to the class.

### PARTIES, JURISDICTION AND VENUE

9.      Plaintiff, Oak Park Animal Hospital, Ltd., is a veterinary clinic and animal hospital with its principal business office located at 242 Madison St., Oak Park, IL 60302.

10.     Defendant, Premium Compounding, Inc., is an Alabama corporation with its principal address and mailing address located at 3220 Hwy 31 South, Bldg A-2, Decatur, AL 35603. Its registered agent is Samuel M. Costello at the same

address, 3220 Hwy 31 South, Bldg A-2, Decatur, AL 35603.

11.     Defendant is a foreign corporation not authorized to do business in Illinois.

12.     Personal jurisdiction exists over Defendant in Illinois because Defendant has committed tortious acts within the State and a significant portion of the events took place here.

13.     Some class members are in Lake County, IL.

**FACTS**

14.     Defendant has sent unsolicited advertisements by facsimile to Plaintiff and a class of similarly-situated persons.

15.     Attached as Exhibit A is a true and correct copy of a two-page advertisement Plaintiff received on its fax machine on or about August 14, 2020.

16.     Plaintiff's fax machine automatically printed Exhibit A to paper upon receipt.

17.     Exhibit A advertises the commercial availability or quality of Defendant's compounding services and goods available for sale.

18.     Plaintiff did not expressly invite or give permission to receive any advertisement by fax from Defendant.

19.     Defendant's fax did not contain the opt-out notice required by the TCPA. Exhibit A.

20.     On information and belief, Defendant sent Exhibit A and other unsolicited advertisements by facsimile to more than 40 persons. This allegation is

4

based, in part, on the fact that <u>Exhibit A</u> is a generic form fax with graphics and trademarks and no personalized information, that sending advertisements in bulk by fax is an inexpensive way to reach a wide audience, and that the fax attached as <u>Exhibit A</u> has no opt-out notice. The header of <u>Exhibit A</u> shows Defendant sent the fax to a computerized list of targets.

21.     Plaintiff intends to discover all the various unsolicited advertisements Defendant sent by fax. *See* <u>Exhibit B</u>, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

22.     Plaintiff and the other class members owe no obligation to protect their fax machines from Defendant's unlawful advertisements. Their fax machines are ready to send and receive their urgent or private business communications, not to receive unsolicited advertising.

## CLASS CERTIFICATION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of itself and a class of all others similarly-situated, initially defined as follows:

> All persons sent one or more telephone facsimile messages: (1) on or after March 14, 2018; (2) from or on behalf of Premium Compounding; (3) advertising property, goods, or services available from Premium Compounding; (4) without their prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

Excluded from the class are Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, and directors, Defendant's legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, and his or her family.

5

24.     The proposed class includes all persons sent any unsolicited advertisement by fax, not just the fax attached to this complaint, and Plaintiff intends to identify those other advertisements in discovery. *See* <u>Exhibit B</u>, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

25.     Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after conducting discovery about Defendant's fax advertising practices as well as discovery as to any potential affirmative defenses Defendant may plead.

26.     This action is brought, and may properly be maintained as, a class action under 735 ILCS 5/2-801, because the class is too numerous for individual joinder, common questions of law or fact predominate over individual questions, the representative party and its attorneys will fairly and adequately protect the interests of the entire class, and this class action is an appropriate method for the fair and efficient adjudication of the controversy.

27.     **<u>Numerosity/Impracticality of Joinder</u>:** On information and belief, the class includes more than 40 persons and, thus, is so numerous that individual joinder of all members is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but Plaintiff expects they will be identified in Defendant's records or the records of one or more third parties.

28.     **<u>Questions of Law or Fact Common to the Class</u>:** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These

6

common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a.    Whether Defendant sent unsolicited advertisements by fax;

    b.    Whether Defendant's faxes advertised the commercial availability or quality of any property, goods, or services;

    c.    The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which it sent advertisements by fax;

    d.    Whether Defendant sent advertisements by fax without first obtaining express permission or invitation;

    e.    Whether Defendant included a clear and conspicuous opt-out notice on the first page of each advertisement sent by fax, containing all content the TCPA requires;

    f.    Whether Defendant is directly or vicariously liable for violating the TCPA;

    g.    Whether Plaintiff and the other class members are entitled to statutory damages;

    h.    Whether the Court should enjoin Defendant from sending future advertisements by fax; and

    i.    Whether the Court should award trebled statutory damages.

29.    **Typicality.** Plaintiff's claims are typical of the other class members' claims.

30.    **Fair and Adequate Representation:** Plaintiff will fairly and adequately protect the interests of the class. Plaintiff does not have any interests adverse to the class. Plaintiff has retained counsel who are experienced in class action litigation generally and the TCPA specifically.

31.  **Predominance and Superiority**. The questions of fact or law common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy regarding Defendant's fax advertisements. The class members have little or no interest in individually controlling the prosecution of separate actions regarding Defendant's faxes, there appears to be no other litigation concerning this controversy, there is nothing undesirable about concentrating the litigation of these claims in this court, and Plaintiff envisions no difficulty in the management of this case as a class action.

32.  **Appropriateness**: A class action is an appropriate method for the fair and efficient resolution of this controversy. Plaintiff envisions no difficulty in the management of this case as a class action.

## COUNT I

### TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

33.  Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

34.  Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons.

35.  The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. § 227(b)(1).

36.  The TCPA defines "unsolicited advertisement," as "any material

advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

37.     The TCPA provides:

> 3.     <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C)     Both such actions.

47 U.S.C. § 227(b)(3).

38.     <u>Exhibit A</u> is an unsolicited advertisement Defendant sent or caused to be sent by fax.

39.     Plaintiff intends to discover and include within this case all unsolicited advertisements Defendant sent by fax.

40.     Defendant violated 47 U.S.C. § 227 *et seq.* by sending advertisements by fax to Plaintiff and the other class members without their prior express invitation or permission and, to the extent Defendant will contend it sent any facsimiles based on an "established business relationship," by not including an opt-out notice. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii).

41.     Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising.

42.     Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to send advertisements by facsimile and that Defendant's faxes did not display an opt-out notice as required by the TCPA (including the FCC's regulations).

43.     Defendant is liable because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, because the faxes were sent on its behalf, or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority, or ratification.

44.     Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's junk faxes caused most recipients to lose paper and toner consumed in the automatic printing of Defendant's faxes. Moreover, the subject faxes used Plaintiff's and the class's fax machines and wasted their valuable time. Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of the faxes occurred outside Defendant's premises.

45.     By using their fax receiving machines and causing them to waste valuable business time receiving and reviewing Defendant's unsolicited facsimiles, Defendant permanently misappropriated the class members' valuable resources and converted them to Defendant's own business use.

46. Moreover, Defendant's unsolicited faxes imposed a burden on the telephone system used for sending and receiving facsimiles and did so in violation of the TCPA.

47. Defendant's fax advertising conduct was wrongful and without authorization.

48. Even if Defendant did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

49. The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful, and Plaintiff asks that the Court do so. 47 U.S.C. § 227.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500 in statutory damages for each of Defendant's violations of the TCPA;

C. That the Court treble the statutory damages to $1,500 per violation if it finds that Defendant knowingly or willfully violated the TCPA;

D. That the Court enter an injunction prohibiting Defendant from

11

sending advertisements by fax without first demonstrating that they have obtained express invitation or permission to fax advertisements or included the required opt-out notice on each advertisement sent by fax to a person with whom Defendant has an established business relationship; and

     E.    That the Court award costs and such further relief as the Court may deem just and proper.

March 14, 2022

Respectfully submitted,

OAK PARK ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock
        One of its attorneys

Phillip A. Bock (ARDC #6224502)
BOCK HATCH & OPPENHEIM, LLC
203 N. La Salle Street, Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500
Facsimile: 312-658-5555
Email: service@classlawyers.com

08/14/20 12:56PM CDT Premium Compounding -> Dr. Amin Bascharon          7083836385 Pg 1
/2

**Contact Blake Sutton**
p (920) 319.0785 or blake@premcompounding.com



## Tablets now available, reach out for options!!
*Free Shipping at $700 – Two Day Shipping (West Coast Free Shipping at $1000)*

### Meloxicam Injectable 10ml-30ml-100ml – 180 Day Dating
5mg/ml $30-$75-$135     10mg/ml $50-$95-$175

### Carprofen Injectable 50mg/ml – 180 Day Dating
20ml $55 *buy 12+ ONLY $50 each*     50ml $125 *buy 8+ ONLY $115 each*

### Amikacin Injectable 250mg/ml – 180 Day Dating
5ml $15     50ml $45     100ml $80

### Triamcinolone Injectable 2mg/ml – 180 Day Dating
100ml $40    *buy 12+ $35 each*

### Enrofloxacin Injectable 23mg/ml – 180 Day Dating
20ml $35     100ml $55     250ml $95

### Apomorphine Injectable 5ml-10ml – 90 Day Dating
1mg/ml $22-$30     2mg/ml $24-$35     3mg/ml $25-$40     6mg/ml $35-$55

### Praziquantel Injectable 56.8mg/ml – 180 Day Dating
10ml $25     50ml $45     100ml $75

### Praziquantel-Pyrantel-Fenbendazole Capsule 100ct-300ct-600ct – 180 Day Dating
22.7mg-22.7mg-113.4mg $55-$150-$270     68mg-68mg-340mg $90-$255-$480
136mg-136mg-340mg $145-$420-$810     272mg-272mg-272mg $195-$570-$1,110

### Praziquantel-Pyrantel Capsule 100ct-300ct-600ct – 180 Day Dating
18.2-72.6mg   $45-$125-$205

### Praziquantel-Fenbendazole Capsule 100ct-300ct-600ct – 180 Day Dating
20mg-40mg $35-$80-$145     40mg-80mg $55-$150-$285

### Praziquantel Capsule 100ct-300ct – 180 Day Dating
17mg $25-$60     34mg $35-$90     68mg $55-$150     136mg $95-$270     272mg $155-$450

**Blake Sutton ● Premium Compounding ● premiumcompoundingrx.com**
blake@premcompounding.com ● p (920) 319.0785 ● f (920) 267.5534
*Prices Subject to Change*

08/14/20 12:56PM CDT Premium Compounding -> Dr. Amin Bascharon          7083836385 Pg 2
/2

**Contact Blake Sutton**
**p (920) 319.0785 or blake@premcompounding.com**



## Tablets now available!!

*Free Shipping at $700 – Two Day Shipping (West Coast Free Shipping at $1,000)*

### Meloxicam Capsule 100ct-300ct – 180 Day Dating
0.25mg $35-$85   0.5mg $40-$95   1mg $53-$145   2mg $58-$159   5mg $75-$205

### Meloxicam Liquid 1.5mg/ml – 180 Day Dating
120ml $35   480ml $95   1000ml $175

### DES (Diethylstilbestrol) Capsule 100ct-300ct – 180 Day Dating
0.5mg $20-$50   1mg $25-$65   2mg $35-$95

### Methocarbamol Capsule 50mg – 180 Day Dating
100ct $45   300ct $115   600ct $200

### Methocarbamol Injectable 100mg/ml – 180 Day Dating
100ml $17   250ml $38

### Fluconazole Capsule 100ct-300ct – 180 Day Dating
25mg $25-$60   50mg $30-$80   100mg $45-$120   200mg $55-$145   300mg $65-$175

### Itraconazole Capsule 100ct-300ct – 180 Day Dating
25mg $55-$145   50mg $90-$250   100mg $145-$405   200mg $195-$535

### Ketoconazole Capsule 100ct-300ct – 180 Day Dating
25mg $25-$65   50mg $30-$80   100mg $45-$125   200mg $55-$155   300mg $65-$185

### Pimobendan Capsule 100ct-300ct – 180 Day Dating
1.25mg $55-$135   2.5mg $65-$175   5mg $75-$195   7.5mg $85-$210   10mg $90-$225

### Pimobendan Liquid 60ml-120ml-480ml – 180 Day Dating
1.25mg/ml $35-$65-$115   2.5mg/ml $45-$85-$155   5mg/ml $65-$115-$305   10mg/ml $85-$155-$425

### Amikacin Injectable 250mg/ml – 180 Day Dating
5ml $15   50ml $45   100ml $80

**Blake Sutton • Premium Compounding • premiumcompoundingrx.com**
blake@premcompounding.com • p (920) 319.0785 • f (920) 267.5534
*Prices Subject to Change*

# BOCK HATCH & OPPENHEIM, LLC

203 North La Salle Street, Suite 2100
Chicago, IL 60601
312-658-5500 (Phone) • 312-658-5555 (Fax)

March 14, 2022

**Attached to Class Action Complaint**

Premium Compounding, Inc.
3220 Hwy 31 South, Bldg A-2,
Decatur, AL 35603

> Re:  Demand for Preservation of Tangible Documents and Electronically Stored Information in *Oak Park Animal Hospital, Ltd. v. Premium Compounding, Inc.*

Dear Sir or Madam:

We represent Oak Park Animal Hospital, Ltd., on behalf of itself and a class of similarly-situated persons ("Plaintiff"). Plaintiff alleges in the captioned case that Premium Compounding, Inc. ("Defendant") sent unsolicited advertisements by fax in violation of the TCPA.

We consider electronic data to be a valuable and irreplaceable source of discovery and evidence in this matter. The laws and rules prohibiting the destruction of evidence apply to electronic data with the same force as they apply to other kinds of evidence.

Plaintiff hereby demands that you preserve all documents, tangible things, and electronically-stored information potentially relevant to the issues in this cause. As used in this document, "you" and "your" refers to Premium Compounding, Inc., and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Page 2 of 7

Electronically-stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example, but not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Network Access and Server Activity Logs;
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Project Management Application Data; and
- Back Up and Archival Files (e.g., Zip, .GHO).

ESI also includes information or data stored on proprietary software, databases or systems.

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive Plaintiff of its right to secure the evidence or the Court of its right to adjudicate the issue.

## A.     Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI including, without limitation, information with the earlier of a Created or Last Modified date on or after March 14, 2018, through the date of this demand and concerning:

Page 3 of 7

a. All electronic mail ("e-mail") and information about e-mail (including message contents, header information, and logs of e-mail systems usage) sent or received by Defendant, anyone relating to Defendant, or any employees or agents thereof;

b. All other e-mail and information about e-mail (including message contents, header information, and logs of e-mail systems usage) containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

c. All databases (including all records and field structural information in such databases) containing any reference to and/or information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

d. All logs of faxing activity (including all reports indicating success or failure of attempted transmission) containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

e. All word processing files and file fragments containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

f. All electronic data files and file fragments created by application programs that process financial, accounting, and billing information related to Defendant, or any employees or agents thereof;

g. All files and file fragments containing information from electronic calendars and scheduling programs regarding Defendant, or fax transmissions sent on behalf of Defendant, or any employees or agents thereof;

h. All electronic data files and file fragments created or used via electronic spreadsheet programs where such data files contain information about Defendant or Defendant's intended fax recipients;

i. All other electronic data containing information about Defendant or Defendant's intended fax recipients; and

j. All e-mail from third party sources that may contain references or correspondence relating to Plaintiff, Defendant and/or Defendant's intended fax recipients.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

## B.     Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify, and modify or suspend, features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

## C.     Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to

Page 5 of 7

preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices maintained offsite, including Cloud Based Data Storage, including any File Transfer Protocol Host Account or Server Storage, whether provided by a server owned or maintained by Defendant or its subsidiaries, agents, or contractors, or maintained by a company on behalf of Defendant, demand is made that you preserve the ESI on those devices.

With regard to all data storage for Defendant or any employee, subsidiary, contractor, or agent thereof, stop any activity which my result in the loss of such electronic data, including the rotation, destruction, overwriting, or erasure of such media in whole or in part, unless a true and correct copy of each such electronic file has been made and steps have been taken to assure that such copy will be preserved and accessible for purposes of this litigation.

### D. Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### E. Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For e-mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

Page 6 of 7

### F.     Servers

With respect to servers like those used to manage e-mail (*e.g.*, Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, *e.g.*, its RAID configuration and whether it can be downed or must be online 24/7. Please call to discuss the sufficiency of preservation methods if you have questions.

### G.     Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including programs, utilities, logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters, legacy or proprietary devices, and the like.

### H.     Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically-stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### I.     Agents, Attorneys, and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### J.     Preservation Protocols

We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Alternatively, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we

Page 7 of 7

urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.

### K.     Do Not Delay Preservation

I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted because of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

### L.     Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

Respectfully,

*/s/ Phillip A. Bock*

Phillip A. Bock
Bock Hatch & Oppenheim, LLC
203 N. LaSalle St., Suite 2100
Chicago, IL 60601
(312) 658-5500

FILED
3/15/2022 2:22 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | |
|---|---|
| OAK PARK ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons, ) ) ) ) | |

OAK PARK ANIMAL HOSPITAL, LTD., )
individually and as the representative of )
a class of similarly-situated persons, )
                       )    No.    22CH93
          Plaintiff, )
                       )                      Insert text here    Insert text here
        v. )
                       )    CLASS ACTION
PREMIUM COMPOUNDING, INC., )
          Defendant. )
                       )

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, Oak Park Animal Hospital, Ltd. ("Plaintiff"), individually and on behalf of a class of similarly-situated persons, through its attorneys, and pursuant to 735 ILCS 5/2-801, moves for entry of an order certifying the following class:

> All persons sent at least one telephone facsimile message (a "fax"): (1) on or after March 14, 2018; (2) from or on behalf of Premium Compounding, Inc; (3) advertising property, goods, or services; (4) without their prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

1.    Plaintiff files this motion soon after the filing of its Class Action Complaint to avoid any attempt by Defendant to "pick-off" or moot Plaintiff's individual claims to defeat this class action. Additional discovery is necessary for the Court to determine whether to certify a class. As a result, Plaintiff will seek leave to pursue class discovery as soon as practicable.

2.     This action satisfies Rule 801's prerequisites to class certification, because the class is too numerous for individual joinder, common questions of law or fact predominate over individual questions, Plaintiff and its attorneys will fairly and adequately protect the interests of the entire class, and this class action is an appropriate method for the fair and efficient adjudication of the controversy.

3.     Plaintiff requests leave to submit a brief and other evidence in support of this motion after obtaining discovery regarding the class elements.

WHEREFORE, based upon the foregoing, Plaintiff respectfully requests that the Court certify this action as a class action pursuant to Rule 801.

March 14, 2022                    Respectfully submitted,

                                 OAK PARK ANIMAL HOSPITAL, LTD.,
                                 individually and as the representative of
                                 a class of similarly-situated persons,


                                 By: /s/ Phillip A. Bock
                                         One of its attorneys

                                 Phillip A. Bock
                                 BOCK HATCH & OPPENHEIM, LLC (#44533)
                                 203 N. La Salle Street, Ste. 2100
                                 Chicago, IL 60601
                                 Telephone: 312-658-5500
                                 Facsimile: 312-658-5555
                                 Email: service@classlawyers.com

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | *For Court Use Only* |
|---|---|---|
| Lake_____ COUNTY | | |

| **Instructions ▼** | | |
|---|---|---|
| Enter above the county name where the case was filed. | Oak Park Animal Hospital, Ltd., et al. _____ **Plaintiff / Petitioner** (*First, middle, last name*) | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | Premium Compounding, Inc. _____ **Defendant / Respondent** (*First, middle, last name*) | 22CH00000093 _____ **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** (*Check this box if this is not the 1st Summons issued for this Defendant.*) | |

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|
| | E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org. |
| | Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |

| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help. |
|---|---|
| | If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:** |
|---|---|
| | a. Defendant/Respondent's primary address/information for service: |
| | Name (*First, Middle, Last*): Premium Compounding, Inc. |
| | Registered Agent's name, if any: Samuel M. Costello |
| | Street Address, Unit #: 3220 Hwy 31 South, Bldg. A-2 |
| | City, State, ZIP: Decatur, AL 35603 |
| | Telephone: (833) 773-1055 Email: |
| In **1b**, enter a second address for Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here: |
| | Name (*First, Middle, Last*): |
| | Street Address, Unit #: |
| | City, State, ZIP: |
| | Telephone: Email: |
| In **1c**, check how you are sending your documents to Defendant/ Respondent. | c. Method of service on Defendant/Respondent: |
| | ☐ Sheriff ☐ Sheriff outside Illinois: _____ |
| | *County & State* |
| | ☑ Special process server ☐ Licensed private detective |

Enter the Case Number given by the Circuit Clerk: 22CH00000093

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:**<br>Amount claimed: $1,500 per fax per class member |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*: Bock Hatch & Oppenheim, LLC<br>Street Address, Unit #: 203 N. La Salle St., Ste. 2100<br>City, State, ZIP: Chicago, IL 60601<br>Telephone: (312) 658-5500    Email: service@classlawyers.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):**<br>☑ a. To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:<br>Address: 18 N County St<br>City, State, ZIP: Waukegan, IL 60085 |
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐ b. Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>　　*Date*　　　　*Time*　　　　　　　　　*Courtroom*<br>In-person at:<br>_____<br>*Courthouse Address*　　*City*　　　　*State*　　*ZIP* |
| In **4b**, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | OR<br>**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):<br>By telephone: _____<br>　　　　　　*Call-in number for telephone remote appearance*<br>By video conference: _____<br>　　　　　　*Video conference website*<br>_____<br>*Video conference log-in information (meeting ID, password, etc.)*<br>Call the Circuit Clerk at: _____ or visit their website<br>　　　　　　*Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>　　*Website* |
| **STOP!**<br>The Circuit Clerk will fill in this section.<br><br>**STOP!**<br>The officer or process server will fill in the Date of Service. | Witness this Date: 3/18/2022<br>Clerk of the Court: *Eva Cartwright Weinstein*<br>**This *Summons* must be served within 30 days of the witness date.**<br><br>Date of Service: _____<br>*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | *For Court Use Only* |
|---|---|---|

Lake _____ COUNTY

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | Oak Park Animal Hospital, Ltd., et al. |
| | **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. |
| | Premium Compounding, Inc. |
| | **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

22CH00000093
**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

My name is _____ and I state
       *First, Middle, Last*

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent

_____ as follows:
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
    Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
    member or lives there:
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____
    And left it with: _____
             *First, Middle, Last*
    Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
    and by sending a copy to this defendant in a postage-paid, sealed envelope to the
    above address on _____ , 20 _____ .

    ☐ On the Corporation's agent, _____
                                 *First, Middle, Last*
    Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk: 22CH00000093

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____
    _____

| |
|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. |

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the** *Proof of Service of Summons* **is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

| |
|---|
| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. |

By: _____

*Signature by:*  ☐ Sheriff
        ☐ Sheriff outside Illinois: _____

        *County and State*
        ☐ Special process server
        ☐ Licensed private detective

**FEES**
Service and Return: $ _____
Miles _____ $ _____
Total $ 0.00 _____

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED
4/14/2022 4:29 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

STATE OF ILLINOIS, CIRCUIT COURT
LAKE COUNTY

Oak Park Animal Hospital, Ltd., et al.

    *Plaintiff(s) / Petitioner(s)*

v.

Case No.: 22CH00000093

Premium Compounding, Inc.

    *Defendant(s) / Respondent(s)*

## AFFIDAVIT OF SERVICE

I, Dawn Klinger, being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents on Premium Compounding, Inc in Morgan County, AL on April 4, 2022 at 10:21 am at 3220 Hwy 31 S, Bldg. A-2, Decatur, AL 35603 by leaving the following documents with Samuel M. Costello who as Registered Agent is authorized by appointment or by law to receive service of process for Premium Compounding, Inc.

Summons
Complaint with Exhibits
Motion for Class Certification

Additional Description:
I placed the documents in Samuel M. Costello's hand. We previously arranged to meet at this time.

White Male, est. age 68, glasses: Y, Gray hair, 180 lbs to 200 lbs, 6' to 6' 3".
Geolocation of Serve: http://maps.google.com/maps?q=34.5480542576,-86.9710396482
Photograph: See Exhibit 1

*Dawn Klinger*
Signature
Dawn Klinger
(256) 590-3159

Subscribed and sworn to before me this 14 day of April ,
2022 , by Dawn Klinger .
Witness my hand and official seal.

My commission expires: ___My Commission Expires: July 14, 2025___ Notary Public

Job #114585        2824-005        Page 1

Scanned with CamScanner

# Exhibit 1



Exhibit 1a)

Scanned with CamScanner